[No. 4652.]

## THOMAS O'BRIEN v. WM. CHAMBERLAIN, J. L. LYONS AND WM. McKIBBEN.

FRAUD IN PURCHASE OF GOODS AT SHERIFF'S SALE.—If the purchaser of personal property at sheriff's sale permits it to remain in the possession of the judgment debtor after the sale, and allows him to exercise acts of ownership over it, the court or jury must take this circumstance into consideration in determining the question whether the sale was fraudulent as to the creditors of the judgment debtor.

IDEM.—The question not decided as to whether a failure by a purchaser, at a judicial sale, to take possession of personal property, will render the sale fraudulent *per se* under our statute as against the creditors of the judgment debtor.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

John Moffitt was engaged in the plumbing business, in San Francisco, and had a stock of goods, and a horse and wagon, used in the business. He was in debt, and Thomas Day and his other creditors brought suits, and levied attachments. Judgments were recovered, and Moffitt's property was sold on execution. At the sheriff's sale, the plaintiff O'Brien became the purchaser for the sum of four hundred and twenty-five dollars. A few days after the sale, Chamberlain and Lyons, who were auctioneers, were employed to sell the goods at auction. At this sale, the goods brought six hundred and twenty-five dollars. Day, whose judgment had not been paid, procured McKibben, who was sheriff, to attach the money received for the goods, in the hands of the auctioneers. O'Brien demanded the money, and upon the refusal of the defendants to pay it to him, brought this suit against the auctioneers and the sheriff. On the trial, the defendants introduced evidence tending to show that Moffitt procured O'Brien to bid off the goods at the sheriff's sale, and that after the sale they remained in Moffitt's possession, and that he exercised acts of ownership over them until the time they were sold at auction by the defendants, Chamberlain and Lyons. The theory of the defendants was that Moffitt employed O'Brien to bid off the goods and furnished him the money, and that Moffitt retained possession of them, and had them sold at auction in the name of O'Brien, but for his own benefit.

The court instructed the jury as follows:

"In order to maintain this action it must appear that the plaintiff was the owner of the property; that he bought it at the sheriff's sale is not disputed; that he paid for it is not disputed; but it is contended that he bought it for the benefit of Moffitt, and that Moffitt still being the owner of the property, the money received by the sale of it by these defendants was Moffitt's money, and was liable to be attached by the creditors of Moffitt; that is the theory of the defendant's case. Mr. Day claims that he had an attachment upon this property, amounting to six hundred and odd dollars. He subsequently got a judgment, in August last, against Moffitt. He says that no part of that amount has

been paid, and that this money should be appropriated to the payment of this claim.

"Now, the question for you to determine is, whose property did this become after the sheriff's sale? Did the plaintiff in this action buy it, and pay for it with his own money, and did it thereby become his property, or did he pay for it, in part or in whole, with the money of Moffitt, and was the purchase made for the benefit of Moffitt? If you believe it was, it will be your duty to find a verdict in favor of the defendants; but if you believe that the sale was made in good faith, and that the plaintiff thereby acquired the title to the property, you should find a verdict in favor of plaintiff."

The defendants asked the court to charge the jury "that unless there was a continued change of possession of the goods after the purchase thereof by plaintiff, at the sheriff's sale, and if the jury believed that Moffitt continued in the possession of the goods after the sale, that then the jury might take those facts into consideration in determining the question, whether or not the purchase of the goods at the sheriff's sale was made by the plaintiff for the use and benefit of Moffitt. And if, from all the facts and circumstances of the case, the jury believe that said goods were bought by plaintiff for the use and benefit of Moffitt, then their verdict should be for defendant."

The court declined to so charge, saying: "I do not think that in a case like this the rule would apply as to continued change of possession."

The plaintiff had a verdict in his favor, on which judgment was rendered, and the defendants appealed from the judgment and from an order denying a new trial.

*Nathan Porter*, for the Appellants.

Section 3440 of the Civil Code provides that "Every transfer of personal property, if made by a person having at the time the possession or control of the property, and not accompanied by immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void against

those who are his creditors, while he remains in possession," etc.

We agree to the proposition, that ordinarily a sheriff's sale divests the judgment-debtor of his title in property sold; but we think there may be an exception to the rule. Fraud in this, as in other matters, would, so far as the judgment-debtor is concerned, vitiate the sale. If his money paid for the goods, the property never passed out of him. It was his duty to appropriate that money to paying his creditors, instead of pretending to pay for his own goods; with it he retains as much as he spends, and more, if, as in this case, the goods were worth more than the money pretended to be paid.

*Quint & Edgerton*, for the Respondent.

Section 3440 of the Civil Code, cited in appellants' brief, only applies to an ordinary sale of personal property between individuals, the distinction between which and a judicial or sheriff's sale is clearly defined by the statute. Section 698 of the Code of Civil Procedure, under the head of execution, is as follows: "When the purchaser of any personal property capable of manual delivery pays the purchase-money, the officer making the sale must deliver to the purchaser the property, and, if desired, execute and deliver to him a certificate of the sale. Such certificate conveys to the purchaser all the right which the debtor had in such property on the day the attachment was levied." In comparing this section of the Code of Civil Procedure with section 3440 of the Civil Code, there can be but one conclusion arrived at, viz., that the two sections were never intended to apply to the same subject-matter, and an application of that character would result in an inconsistency in this, that Section 3440 of the Civil Code was intended to protect against fraud and perjuries, and in order to accomplish that, a certain course of proceeding is required, to wit, upon the transfer of the property, the same must be immediately delivered, and the delivery followed by an actual and continued change of possession.

By the COURT:

The court below erred in refusing to charge the jury as requested by the defendants. One of the questions in issue was whether the purchase by O'Brien at the sheriff's sale was in fact made for Moffitt and with his money. It is unnecessary to determine whether a failure by a purchaser at a judicial sale to take possession of personal property purchased at such sale, will render the sale fraudulent *per se* under our statute, as against the creditors of the judgment-debtor. But if the purchaser permits the property to remain in the possession of the judgment-debtor, and allows him to exercise acts of ownership over it after the sale, the jury is authorized to consider this circumstance in determining the question of actual fraud.

Judgment reversed and cause-remanded for a new trial.